IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 3:12-430 (CMC) |
| | ) | |
| -vs- | ) | |
| | ) | SENTENCING MEMORANDUM AND |
| | ) | REQUEST FOR 18 U.S.C. §3553(a) |
| DANIEL EUGENE BIFIELD | ) | SENTENCE CONSIDERATION |

Now comes the Defendant, Daniel Eugene Bifield ("Bifield"), by and through his undersigned counsel, who submits this sentencing memorandum asking the court to impose a reasonable sentence that is "sufficient, but not greater that necessary to comply with (the purpose of sentencing)." See 18 U.S.C. §3553(a), See also *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005). The court should impose the least severe sentence necessary to satisfy the four purposes of sentencing which are punishment, deterrence, protection of the public and rehabilitation. *United States v. Cull*, 446 F.Supp. 2d 961(E.D. Wisc 2006). For the reasons set forth herein, Bifield submits that a sentence of ten (10) years imprisonment would be appropriate to satisfy those purposes.

**Background**

Pursuant to a joint plea agreement entered into by Bifield and his wife, Lisa Bifield ("Lisa"), Bifield pled guilty to Count 2 of the superceding indictment which alleged a violation of 18 U.S.C. §1962(d), racketeering conspiracy. Lisa was allowed to plead guilty to Count 47, a violation of 18 U.S.C. §924(c), possession of a firearm during and in

1

relation to a drug trafficking crime or crime of violence.  Bifield and Lisa signed their plea agreements on December 27, 2012.

Bifield's presentence report (PSR) has determined that he has a total offense level of 37 and a criminal history of VI, resulting in a guideline range of 360 months to life imprisonment.  However, because the statutory maximum for Count 2 is 20 years, 20 years becomes the guideline range.  In this motion, Bifield argues that a 20 year sentence far exceeds what would be necessary to accomplish the statutory purpose of sentencing.  He submits that this guideline does not take into account his age (61 years old), the savings of time and money that have accrued to the court and government because of his and Lisa's decision to plead guilty nor the sentencing manipulation employed by the government to dramatically increase the guidelines for all of the defendants in this case. For these reasons, Bifield contends that his sentence should not exceed ten (10) years.

## Considerations of 18 U.S.C. §3553(a)

Despite the recognition of the mandate of 18 U.S.C. §3553(a), this Circuit has held that properly calculated sentences under Guidelines are entitled to a presumption of reasonableness.  *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006).  Following recent United Supreme Court decisions, increased reliance is placed upon the statutory sentencing factors set out in 18 U.S.C. §3553(a).  Section 3553(a) is composed of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of §3553(a), and the "factors" to be considered in fulfilling that mandate.

The basic mandate and overriding principle of §3553(a) requires a district court to impose a sentence "sufficient, but not greater than necessary," to comply with the

2

four purposes of sentencing set forth in subsection (2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. §3553(a)(2).  These four purposes of sentencing codify the historical theories of punishment and reflect the several separate goals of sentencing, namely retribution and prevention (section A), deterrence (section B), restraint and incapacitation (section C) and rehabilitation (section D).  Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* §5 (1972).  The sufficient-but-not-greater-than-necessary requirement has been described as the "parsimony provision." See, e.g., *United States v. Brown*, 356 F.Supp. 2d 470, 479 (M.D. Pa. 2005), *United States v. Wilson*, 350 F.Supp. 2d 910, 922 (D.Utah 2005), *United States v. Lacy*, 99 F.Supp. 2d 108, 119 (D.Mass. 2000). Critically, the parsimony provision is not just another "factor" to be considered along with the others set forth in section 3553(a).  Rather, it sets a theoretical upper limit on the sentence a court may impose - what is sufficient but not greater than necessary to accomplish the goals of sentencing.

### 18 U.S.C. §3553(a) Factors

In determining what sentence is sufficient but not greater than necessary to comply with §3553(a)(2) purposes, the court must consider the factors listed in §3553(a). These factors are:

> (1)     the nature and circumstances of the offense and the history and

3

characteristics of the defendant;

(2)     the need for the sentence imposed to comply with the purpose of sentencing;

(3)     the kinds of sentences available;

(4)     the kind of sentence and the sentencing range established under the sentencing guidelines;

(5)     any pertinent policy statement issued by the Sentencing Commission;

(6)     the need to avoid sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

Neither the statute nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. After calculating the range prescribed by the guidelines, the court should consider the factors set forth in §3553 before imposing sentence. The sentence will be affirmed as long as it is within the statutorily prescribed range and is reasonable. *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005). *Booker, Id.* at 764. Again, §3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing is the overriding principal. Applying these factors to Bifield, it becomes clear that a sentence of 10 years imprisonment is appropriate to serve the purposes of sentencing.

Dan Bifield is a unique and colorful individual. He was born in Bridgeport, Connecticut. Bifield has been a full patched member of the Hells Angels Motorcycle Club for over 38 years and considers the club to be his family. The government attempts to portray Bifield as an evil individual when in fact he possesses many character traits that are highly prized by society. Bifield is a very loyal person. He will stand by his friends and

4

family regardless of the personal cost to him. He is a fighter with an indomitable will. Bifield does not give up and rarely gets down. Bifield loves Lisa, his wife, and is willing to sacrifice himself for her benefit. Each of these qualities, which Bifield possesses to an extraordinary degree, are highly prized by society.

Unfortunately, these same characteristics become a liability within the confines of the criminal justice system. Bifield's loyalty to his friends and family make it impossible for him to earn a downward departure by becoming a snitch. His pugnacious nature lends itself to a tendency to prefer jury trials to negotiating plea agreements. Jury trials have not served Bifield well because, in his case, they have usually resulted in convictions, followed by the imposition of the maximum sentences. This is why almost half of his criminal history points come from convictions that are over 30 years old (see Paragraphs 249 and 348 of PSR). Bifield's outspoken nature and charismatic personality place an oversized target on his back that, in this case, contributed to the FBI's decision to spend millions of dollars investigating a group engaged in virtually no criminal conduct prior to the inducements provided by the government's informant. Bifield's love for his wife was used by the government to secure a guilty plea that provided him little to no personal benefit, but secured substantial concessions for Lisa. (Unless, of course, the court can be convinced to sentence Bifield below the guideline.) All of these traits make Bifield exactly the type of person you would want beside you in a foxhole as the enemy attacks and lead directly to a guideline that is oversized to the conduct prosecuted.

**18 U.S.C. §3553(a)(2)**

These purposes, as outlined herein, are (A) to reflect the seriousness of the

5

offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. §3553(a)(2).

The defendant intends to argue the government has artificially inflated his guidelines, i.e. manipulated his sentence, by having their informant claim that he had a crew robbing methamphetamine dealers in New York who then sold these fictional drugs in Canada. The use of the non-existent crimes in the guideline computation completely distorts the picture of the crimes for which the defendant should be held accountable.

In time gone by, law enforcement could be relied on to investigate and prosecute crimes once they had been committed. Today, confidential informants, undercover officers and "sting" operations have become increasingly common. In these operations, the police have virtually unfettered discretion to determine the type of crimes to be induced, the amount of the incentives to be given, the words communicated to the suspect and the tactics to be employed. These investigative choices allow law enforcement to structure the crimes being committed and virtually write the guidelines for each defendant as they see fit.

The defendant submits that the FBI agents running this investigation went to extraordinary lengths to manipulate the defendant's conduct for the purposes of creating unjustifiably lengthy guideline ranges. Determining the appropriate sentence has always been uniquely the province of the sentencing court. This judicial function has effectively been usurped by police manipulation of the investigation.

6

*United States v. Beltran*, 571 F.3d 1013 (10th Cir. 2009), provides a listing of the different approaches taken to "sentencing manipulation" by the federal courts in footnote 1.

> Other federal circuit courts of appeal have adopted varying approaches to claims of sentencing manipulation as an objection to a sentence. The Sixth and D.C. Circuits categorically reject the doctrine of sentencing factor manipulation and do not consider such claims, while the Second, Third, Fourth, Fifth and Seventh Circuits have not expressly accepted or rejected a defense of sentencing factor manipulation. *United States v. Guest*, 564 F.3d 777 (6th Cir. 2009); *United States v. Tykarsky*, 446 F.3d 458 (3rd Cir. 2006); *United States v. Snow*, 309 F.3d 294 (5th Cir. 2002); *United States v. Gomez*, 103 F.3d 249 (2nd Cir. 1997); *United States v. Walls*, 70 F.3d 1323 (D.C. Cir. 1995); *United States v. Okey*, 47 F.3d 238 (7th Cir. 1995); *United States v. Jones*, 18 F.3d 1145 (4th Cir. 1994). The Ninth Circuit permits district courts to depart downward if a defendant can establish "imperfect entrapment," which is not a complete defense to a criminal charge but may provide a basis for a downward departure at sentencing. *United States v. Mejia*, 559 F.3d 1113 (9th Cir. 2009). The First and Eighth Circuits recognize the doctrine of sentencing manipulation as a basis for a downward departure in extraordinary cases when the government improperly engages in conduct to expand the scope of a crime. *United States v. Fontes*, 415 F.3d 174 (1st Cir. 2005); *United States v. Shephard*, 4 F.3d 647 (8th Cir. 1993). The Eleventh Circuit had adopted an approach similar to *Lacey* and considers whether the certain sentencing factors should be filtered out or rejected due to the government's outrageous conduct, *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). *Id.* at 1021.

This motion urges the court to follow the lead of the First, Eighth, Ninth and Eleventh Circuits.

In objection 5 to the PSR, the defendant contests the inclusion of the five pounds of methamphetamine in his guideline computation. If that objection is sustained, the defendant does not intend to argue sentence manipulation as a ground for variance. If that objection is overruled, the defendant contends that the resulting guideline overstates the criminal conduct because:

(1)     Bifield never agreed to the robbery of the fictional drug dealers in New York. In fact, he repeatedly told the Confidential Informant ("C.I.") that he did not need to know and did not care what he did with the guns he purchased.

(2) Bifield never believed that a make-believe mobster like the C.I. had a crew in another state committing crimes for him. Once the C.I. started offering money that he claimed came from drug sales, Bifield had concluded that the C.I. was a snitch. He then preceded to try and get as much money as he could out of him. Bifield kept the $15,000.00 for himself that the C.I. provided, and he tried his hardest to get the $50,000.00 discussed.

(3) The guidelines, as written, treat defendants just as harshly as if they had committed a robbery themselves and sold the stolen methamphetamine. Surely some reduction is appropriate for a defendant who merely arranges the sale of a gun knowing (assuming he in fact knew) that it would be used in another crime as compared to the person who actually uses the gun to commit the crime.

(4) The five pounds of fictional meth makes up a substantial portion of Bifield's base offense level for drugs. With the fictional meth included in paragraph 275, the base offense level is a 34. With just the cocaine included, Bifield would have a base offense level of 28. The error is compounded by giving Bifield a four level increase for his role in the offense. There is no way he can be considered an organizer or leader of the make-believe crimes in New York.

(5) This case is much different than the typical "stash house robbery sting." In those cases, the defendant is sometimes held responsible for the amount of drugs that undercover operative suggests will be there because the defendant agrees to be a participant in the actual robbery. The defendant in those cases usually shows up at the take down armed and ready to commit the offense.

Section 3553(a)(2)(A) states that sentences should reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. When fictional crimes are used to inflate the guidelines, the sentence will not reflect the seriousness of the offense. Government created or instigated crime tends to promote contempt, not respect, for the law. Just punishment can exist in this case by punishing the defendant for what he actually did, not what the snitch proposed.

### B. To Provide Adequate Deterrence To Criminal Conduct

Bifield submits that "adequate deterrence" can be achieved with a sentence

much lower than 20 years. This prosecution has cost him his home, his motorcycle, his chapter of the Hell Angels, and, potentially, his wife.  If the court were to agree to the 10 year sentence suggested in this motion, few would be able to argue that similarly situated individuals would not be deterred by the price paid by Bifield.

The resolution of Bifield's case through a guilty plea should also give the court confidence that Bifield will be personally deterred from engaging in criminal conduct. Bifield has a long history of exercising  his constitutional right to a jury trial.  In this case, he was one of the first, if not the first, to sign a plea agreement. Counsel believes that Bifield's guilty plea resulted in a tremendous savings of judicial resources that are basically unrewarded under the PSR as written. Bifield submits that the entry of a guilty plea, his good conduct while enduring extremely harsh conditions during  the past year in county jails and his general decorum at every court hearing demonstrates that he has been deterred from future criminal conduct.

### C. To Protect the Public from Further Crimes of the Defendant

Bifield is 61 years old. He will be 62 years old in September of this year.  If the court imposes a ten year sentence, Bifield will be in his 70's before he is eligible for release. Upon release from the Federal Bureau of Prisons, he will still be supervised by the United States Probation Office for three years.

Studies have shown that older defendants are much less likely to commit new criminal conduct. *United States v. Lucania*, 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005)("Post-*Booker* courts have noted that recidivism is markedly lower for older defendants.") *United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) (unpub.)

(Where 55 year old woman pled guilty to distribution of drugs sentence of 30 months (below guideline range) proper in part "in view of the low probability that Carmona-Rodriguez will recidivate." Defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004) *www.ussc.gov/publicat/Recidivism_General.pdf.* (Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (unpub.).  (In drug case, career offender guideline of 262 months too great; client will be 48 when he emerges from prison. The goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment.  Hope is the necessary condition of mankind, for we are all created in the image of God.  A judge should be hesitant before sentencing too severely that he destroys all hope and takes away all possibility of useful life.  Punishment should not be more severe than that necessary to satisfy the goals of punishment.") *Simon v. United States*, 361 F.Supp.2d 35 (E.D.N.Y. 2005) ("Under the Guidelines, age was not normally relevant to sentencing. § 5H1.1. Post -*Booker*, however, at least one Court has noted that recidivism drops substantially with age.  *Nellum*, 2005 WL 300073 (granting non-Guideline sentence and nothing that recidivism rate for defendants between the age of 41 and 50 with a criminal history category of III is less than half that of defendants under the age of 21).  "The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes" of the defendant. I therefore conclude that a sentence of 262 months provides sufficient, but not excessive, deterrence for this defendant."); *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb.

10

3, 2005) (unpub.) (Where 57 year old defendant convicted on distributing crack-cocaine; and his guideline sentencing range was 168-210 months, sentence of 108 months because court had also to consider the need to deter Nellum and others from committing further crime under §3553(a)(2). A guideline sentence would mean the defendant would be over the age of 70 at his release. The court's sentence will cause his release at 65 and "The likelihood of recidivism by a 65 year old is very low." *See* United States Sentencing Commission Report released in May, 2004)(located at http://www.ussc.gov/publicat/Recidivism-General.pdf.)

If the court imposes a guideline sentence, Bifield will be close to 80 years old when he is released. This is clearly more severe than necessary to accomplish the statutory goals of sentencing.

### D.  To Provide the Defendant with Needed Educational or Vocational Training Medical Care or Other Correctional Treatment in the Most Effective Manner

Many of the institutions within the Bureau of Prisons are becoming more like nursing homes than prisons. Housing inmates in their 60's and 70's comes with a significantly higher price tag and a host of practical problems. While Bifield could defend himself now, the same may not be true ten years from now. The United States Department of Justice recognized this problem in a 2004 study which states "management problems with elderly inmates...are intensified in a prison setting and include: vulnerability to abuse or predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment." Correctional Health Care Addressing the Needs of Elderly Chronically Ill and Terminally Ill

11

Inmates, United States Department of Justice, National Institute of Corrections 2004 Ed. It should be noted that throughout this report, the elderly are defined by the various institutions as 50 years of age and older.  The guidelines do not take into account the societal cost of housing Bifield until he is 80 years old.  The dictates of 3553(a) require the court to consider this factor in the mix with the other things discussed in this motion to arrive at an appropriate sentence.

Bifield does intend to request that the court recommend to the Bureau of Prisons that he be transferred to a facility in South Carolina whenever his custody level would allow for the transfer, so that he would have the opportunity to see his wife, Lisa. It seems likely that she will be released substantially sooner than Bifield.


## Conclusion

For the reasons stated in this motion, Bifield respectfully moves the court to impose a sentence not greater than ten (10) years.  Bifield also asks that the judgment include a recommendation that he be transferred to a facility in South Carolina whenever his custody level would allow it.

Respectfully submitted,


s/ALLEN B. BURNSIDE
Assistant Federal Public Defender
c/o BB&T Bank Building
1901 Assembly Street, Suite 200
Columbia, South Carolina  29201
Telephone:   (803) 765-5073
ATTORNEY ID# 1620
Email address: Allen_Burnside@fd.org

Columbia, South Carolina

May 23, 2013

12