IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ) | CRIMINAL NO. 3:12-430-CMC |
| ) | |
| v. ) | **OPINION and ORDER** |
| ) | |
| Daniel Eugene Bifield, ) | |
| a/k/a "Diamond Dan," ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Defendant, proceeding *pro se*, seeks relief in this court pursuant to 28 U.S.C. § 2255. Defendant raises claims of ineffective assistance of counsel and prosecutorial misconduct. The Government filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. Defendant has responded to the Government's motion by filing his own motion for summary judgment and this matter is accordingly ripe for resolution.

**I. BACKGROUND**

In May 2012, Defendant and nineteen (19) co-defendants were indicted in this District for a wide-ranging association-in-fact[1] racketeering conspiracy involving drug distribution, money laundering, armed robberies, firearms trafficking, arson, and other offenses. *See* Indictment, ECF No. 1. Based on the number of defendants and the amount of discovery in the case, the court set the case for trial beginning January 24, 2013. A superseding indictment was returned in September 2012, and the court thereafter set a December 18, 2012, deadline for entry of guilty pleas.

---

[1] Defendant is a full patch member of the Hells Angels Motorcycle Club. At the time of his arrest, Defendant was a member of the Rockhell Nomad Chapter of the Hells Angels and had served as president of the chapter, located in Rock Hill, South Carolina.

1

After an extension of time to consider entry of a guilty plea, Defendant appeared with counsel on January 3, 2013, and after a thorough Rule 11 hearing, entered a guilty plea to Count 2 of the Superseding Indictment, conspiracy to engage in racketeering in violation of 18 U.S.C. § 1962(d). The matter was then set for sentencing.

On February 19, 2013, Defendant moved to withdraw his guilty plea. ECF No. 1013. Defendant argued that the Government had committed prosecutorial misconduct and that his guilty plea was therefore not a knowing and voluntary plea. On April 11, 2013, the court held a hearing on Defendant's motion. After private consultation with his counsel and his co-defendant, Lisa Ellen Bifield ("Lisa") (Defendant's wife) and her counsel, Defendant, under oath, withdrew his motion for withdrawal of guilty plea. The court specifically asked Defendant:

> THE COURT: [W]hat is your desire regarding your motion to withdraw your guilty plea? Do you wish to go forward with it, or do you wish to withdraw it?
>
> DEFENDANT: I withdraw it.
>
> THE COURT: Do you understand that if you withdraw it, all the grounds that you have raised in it are decided; in other words, that you would not be able at a later time to come back and claim these grounds as a basis to withdraw from your guilty plea?
>
> DEFENDANT: Excuse me a minute. (Pause - Mr. Bifield confers with attorneys.) Yes, ma'am.
>
> THE COURT: All right. So, basically, this issue that you've raised, the primary issue that you've raised in this motion, was that you were not aware at the time you entered your guilty plea that your wife had given statements to the Government. You were not told about that. And you challenged the voluntariness or the knowing nature of your guilty plea because you contended there was an absence of knowledge at that time.
>
> DEFENDANT: Yes, ma'am.

> THE COURT: So if you withdraw this [motion to withdraw] guilty plea, you would be withdrawing that claim and basically saying that whether or not that's true or not, you still wish to go forward with your guilty plea.
>
> DEFENDANT: Yes, ma'am.
>
> ****
>
> THE COURT: All right. At this point then we're going to note that entry number 1013 which is Mr. Bifield's motion to withdraw a plea of guilty is withdrawn with prejudice, that the motion to join in the co-defendant's motion for joint conference is moot in light of the fact that they've had a joint conference this morning, and that the Government is not going to proceed on a breach contention as to Ms. Bifield.

Tr. of Motions Hrg. at 32-33, 37, ECF No. 1425.

A Presentence Report (PSR) was prepared in anticipation of sentencing. On May 29, 2013, Defendant appeared for sentencing. The court overruled Defendant's objections to the PSR and granted in part Defendant's motion for variance sentence. Defendant was sentenced to 210 months' imprisonment, 3 years' supervised release, and a special assessment of $100.00. Included in the Judgment Order was a Judgment and Order of Forfeiture which ordered forfeiture of a motorcycle and a money judgment of $300,000.00. *See* ECF Nos. 1363 & 1369.

Defendant filed a Notice of Appeal to the Fourth Circuit Court of Appeals, arguing that the Government had committed prosecutorial misconduct relating to entry of his guilty plea and that his guilty plea was not knowing and voluntary. On December 3, 2013, the Fourth Circuit affirmed Defendant's conviction by *per curiam* opinion, finding that Defendant's affirmative waiver of his arguments at the April 11, 2013, hearing precluded his ability to pursue them on appeal. *See United States v. Bifield*, 547 F. App'x 273 (4th Cir. 2013). Defendant filed a petition for writ of certiorari to the United States Superme Court, which was denied. *United States v. Bifield*, __ U.S. __, 134 S.

Ct. 1921 (2014). Defendant thereafter timely filed the current motion for relief under 28 U.S.C. § 2255.

## II. STANDARD

The majority of Defendant's allegations are that he received ineffective assistance of counsel, both in the trial court and on appeal. The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). Defendant must also establish that he suffered prejudice as a result of counsel's actions.

The same two-part test applies in the context of cases in which a defendant entered a guilty plea. To establish prejudice in the context of a guilty plea Defendant must show that "there is a reasonable probability that, but for counsel's error, [Defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In applying *Strickland* to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)."'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536

4

(1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id*. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To establish prejudice relating to actions of appellate counsel, Defendant must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on appeal. *See id*. at 285-86.

### III. DISCUSSION

#### A. Barred Claims

#### *1. Claims Raised on Appeal*

Defendant argues the Government committed prosecutorial misconduct in failing to disclose to him the terms of Lisa's plea agreement which required her cooperation (and the fact that she had given proffer interviews prior to entry of his plea); in securing his guilty plea with the promise of recommending a five year sentence for Lisa which he claims induced his guilty plea; and by having FBI Special Agent Devon Mahoney sit in on a meeting between Defendant and Lisa which Defendant contends violated his right to confidential communications with his wife. However, Defendant raised these claims of prosecutorial misconduct on direct appeal, and they were decided

5

against him; therefore, he cannot relitigate them in this § 2255 motion. A defendant "cannot circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, __ U.S. __, 135 S. Ct. 47 (2014) (quotation marks, alteration, and citation omitted). *See also Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (§ 2255 petitioner may not "recast, under the guise of collateral attack, questions fully considered by this court").[2] This court's consideration of Defendant's claim of prosecutorial misconduct is accordingly foreclosed, and the Government is entitled to summary judgment on this claim.

### *2. Other Substantive Claims*

Additionally, to the extent Defendant seeks to raise substantive claims outside the rubric of ineffective assistance of counsel, these claims are procedurally barred. For example, Defendant argues that the indictment suffered from a number of infirmities. *See*, *e.g.*, Mot. to Vacate Sentence at 20-21, 23, ECF No. 1721. Defendant argues that "[t]here were basic fundamental and glaring issues with this indictment[,]" Mot. at 20, such as "movant cannot be convicted or sentenced for the RICO narcotics conspiracy and the 846 drug conspiracy together." *Id*. Claims that could have been raised before the district court or on appeal, but were not, may not be asserted in collateral

---

[2]Morever, Defendant's affirmative waiver of his claim of prosecutorial misconduct in April 2013 precludes consideration of this claim on collateral attack. A party waives a right when he intentionally relinquishes or abandons it. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *United States v. Mitchell*, 85 F.3d 800, 807 (1st Cir. 1996). This is to be distinguished from a situation in which a party fails to make a timely assertion of a right-what courts typically call a "forfeiture." *United States v. Olano*, 507 U.S. 725, 733 (1993). The difference is critical: a waived issue ordinarily cannot be resurrected on appeal or collateral attack, *see*, *e.g.*, *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir.1997), whereas a forfeited issue may be reviewed for plain error, *Olano*, 507 U.S. at 733-34. *See also Puckett v. United States*, 556 U.S. 129, 138 (2009) (noting that intentional waiver, unlike forfeiture, results in no error at all to be reviewed).

6

proceedings. *United States v. Frady*, 456 U.S. 152, 162-66 (1982); *United States v. Landrum*, 93 F.3d 122, 124 (4th Cir. 1996) (a claim raised for the first time in a § 2255 petition is generally not cognizable in federal courts).

The Supreme Court has recognized an equitable exception to the prohibition, however, when a habeas applicant can demonstrate cause and prejudice, or when a miscarriage of justice would occur from a court's refusal to entertain the collateral attack. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see also United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Id.* Prejudice is then shown by demonstrating that the error worked to Defendant's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. *See Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir.1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *Mikalajunas*, 186 F.3d at 293. The Supreme Court has held that an error of law, as distinguished from a constitutional error, is cognizable under § 2255 only if it "constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted).

To the extent Defendant raises substantive issues regarding the legality of the charges in the indictment or claims other than those covered by his ineffective assistance of counsel arguments, the court finds Defendant could have raised them both in the trial court and/or on direct appeal. Having failed to raise these at either stage, Defendant is barred from raising them in this § 2255

7

motion. Therefore, the Government is entitled to summary judgment to the extent these claims are raised, and they are dismissed with prejudice.

### B. Ineffective Assistance of Counsel – Other Than Forfeiture

Defendant argues in his § 2255 motion that he received ineffective assistance of counsel regarding a variety of issues, including counsel's following alleged failures: not conducting pretrial investigation of facts (including failing to investigate the criminal history of the Government's main informant); not attacking legal shortcomings of the indictment; not explaining elements of the charges; not vigorously pursuing issues regarding sentencing entrapment; and failing to provide effective assistance on appeal. *See generally* Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 1721. Yet Defendant fails to specifically address the Government's arguments regarding these claims of ineffectiveness of counsel except to argue that the Government failed to present affidavits in opposition to his affidavit in support of his § 2255 motion which he argues "set out in clear [and] concise detail the reasons why his counsel was ineffective." Reply at 2, ECF No. 1790.

In opposition to Defendant's motion and affidavit, trial counsel Allen Burnside attests, *inter alia*, that he and co-counsel, Kathy Evatt, spent over 1100 hours on the case, including spending hundreds of hours reviewing discovery; that he was aware of the complained-of informant's criminal history and other related impeachment information; and that counsel is not aware of any non-frivolous statutory or constitutional infirmities with the superceding indictment that were not raised in the case. *See generally* Aff. of Allen B. Burnside, ECF No. 1775.

In response to the Government's motion and Burnside's affidavit, Defendant fails to contradict Burnside's averments. Additionally, Defendant's attestation and argument regarding counsel's failure to "prepare a proper appeal for me," Aff. of Dan Bifield at ¶ 50, ECF No. 1721-1,

8

fails to identify any non-frivolous argument that should have been raised on appeal. Accordingly, for the reasons set forth by the Government, with which the court agrees, the above-noted claims of ineffective assistance of counsel are without merit. Therefore, the Government is entitled to summary judgment on these claims and they are dismissed with prejudice.

### C. Ineffective Assistance of Counsel – Forfeiture

Defendant argues he received ineffective assistance of counsel relating to the forfeiture allegations of the indictment and the forfeiture provisions of his plea agreement. Specifically, Defendant argues he was not advised of the forfeiture provisions to which he agreed in the plea agreement, that counsel did not discuss the forfeiture allegations in the indictment with him, and that, as noted above, counsel was ineffective in failing to properly represent Defendant on this matter.

At sentencing, the following exchange occurred when the court inquired as to the Proposed Judgment and Preliminary Order of Forfeiture that had been entered:

> THE COURT: Before we get started with the mitigation and variance issues, are there any objections to the judgment and preliminary order of forfeiture that has been submitted by the Government?
>
> MR. BURNSIDE: Your Honor, under the Criminal Justice Act, we don't represent Mr. Bifield on that motion. We represent him on his liberty interest, not his property interest. I know he's got 30 days to respond to that motion. So I would like for him to have that opportunity. I have spoken with Mr. Richardson [the prosecutor] about the return of other items that really don't have much or any monetary value. And I think they're going to cooperate with us in turning those over. So I'm going to try to get a statement from Mr. Bifield as to who he would want to have that property turned over to.
>
> THE COURT: I saw somewhere in the pre-sentence report or in something that I read that the money for this Harley Davidson was put up or loaned to him from someone. In other words, there might be someone -- he may have an interest I suppose.

9

MR. BURNSIDE: I think there is a loan, a commercial loan with a bank.

MR. RICHARDSON: He just signed the note. I think [an individual] signed the note along with Mr. Bifield. There is a financial institution. I believe they have been in touch with [AUSA] Ragsdale already. Obviously their interest would be taken into account.

THE COURT: Right. Well, this was not filed as a motion. This was filed as a proposed judgment and preliminary order of forfeiture. So what you're saying is that he does not agree to it and that he wants them to file a motion? I would think that would be necessary. Or they could simply file a motion and attach this proposed order to it and then that would start the time to run. What do you say, Mr. Richardson? This was not covered in the agreement?

MR. RICHARDSON: It is covered in the agreement. He did agree to agree to the forfeiture, which this is what it is. Obviously if he does not agree to it, we think that's yet another thing Your Honor ought to take into account as part of his sentencing.

THE COURT: Well, but did the plea agreement say that he was going to forfeit these specific -- you know, a judgment in a specific amount?

MR. RICHARDSON: It says that he agrees to the forfeiture. That was what was in the -- this is for him what was in the indictment. This is what's listed there. For Count 2, these are the items [that] are his that were listed in Count 2.

THE COURT: Well, but was there in the indictment a mention of 300,000?

MR. RICHARDSON: Yes, Your Honor.

THE COURT: Okay. I didn't recall that.

MR. RICHARDSON: I can -- that is on page 88 of the indictment.

THE COURT: Okay.

MR. BURNSIDE: Judge, the plea agreement does not specifically state the motorcycle or the $300,000. This was something that was filed yesterday. We've not even really had a chance to discuss it with Mr. Bifield from that standpoint since we got that.

THE COURT: The thing is, this is a criminal forfeiture. I don't understand why you say you all don't represent him. Because it's part of the indictment. It was part of the plea agreement. And if I don't do it as part of the judgment order, then

10

I have to bring him back for another continuation of the sentencing hearing to resolve this. I think it's a 90-day window that I have under the rule that allows me to defer the forfeiture. Or maybe that only applies to restitution. But in any event –

MR. RICHARDSON: I'm not sure. I don't think you can enter a judgment until the forfeiture is resolved. And certainly the Government –

THE COURT: Right. It delays the entry of final judgment. It certainly delays the entry of final judgment and delays the entry of designation.

MR. BURNSIDE: We certainly want to accommodate the Court. I have had this conversation with Mr. Small about what is the office's position on forfeitures. And the Criminal Justice Act is, his understanding and mine, too, that we are appointed under the Criminal Justice Act to represent someone's liberty interest, not their property interest. I may want to talk to him and clear it up.

THE COURT: So what if -- I mean, like the rest of us who went to trial, we had -- this went to the jury. So what if you had been representing Mr. Bifield at trial and then we got to that stage three, phase three, you're going to stand up and say, sorry, we're not his lawyer now?

MR. BURNSIDE: I doubt we would do that. I'm pretty sure we wouldn't do that.

THE COURT: I wouldn't think so.

MR. BURNSIDE: And there may be some way we can work this out, too. We just haven't had a chance to go over it with Mr. Bifield.

THE COURT: Okay.

MR. BURNSIDE: But we can do that. We can try to talk to him and see.

THE COURT: All right. I mean, as far as the motorcycle is concerned, what he would be giving up if he agreed to this, or if I ordered it, is any interest he has in the motorcycle. So if [an individual] or the bank or someone else has an interest in it, that's not affected. It's just his interest in the motorcycle. As far as the $300,000, I don't know how that was calculated. So I'm just not sure about that.

MR. BURNSIDE: I'm not sure how it was calculated either.

MR. RICHARDSON: Under the RICO forfeiture, he is criminally responsible for all, jointly and severally responsible, for all proceeds from the RICO activity.

11

THE COURT: Right.

MR. RICHARDSON: What that is is described to the Grand Jury. And, otherwise, it's basically you look at the cocaine, the drugs, the money laundering, the guns; that is the quite low, I think, estimate of the proceeds received by this conspiracy. Just like in a drug –

THE COURT: So you basically totaled it up for everybody and then said that they are jointly and severally responsible.

MR. RICHARDSON: Correct, Your Honor. For some individuals who had limited involvement, you recall what, for example Mr. -- well, I guess that's a -- how about [a co-defendant], for example. He had limited involvement, wasn't a leader, wasn't responsible for lots of other things. We limited his to the activity that he personally was involved with. With Mr. Bifield, we're not able to do that because he literally was involved with everything, from our perspective. We certainly have the legal right to make [a co-defendant] jointly and severally liable for the whole $300,000. We chose out of our discretion not to do that.

THE COURT: Okay. All right. Well, I guess we'll have to delay that.

MR. RICHARDSON: Your Honor, I will point to paragraph 9 of the plea agreement where the defendant agrees to voluntarily surrender and not to contest the forfeiture by the United States of any and all assets and property owned or purchased by the defendant which are subject to forfeiture pursuant to any provision of law and are in the possession – ya-da, ya-da, ya-da. That's paragraph 9 of the plea agreement.

THE COURT: Is his position different for the two different items, or is it the same?

MR. BURNSIDE: Well, he really doesn't own anything. So, I mean, I think his position would be different. Paragraph 9 would appear to encompass the motorcycle; whereas, I don't think that paragraph 9, the language there does not seem to cover the $300,000 judgment. I know that the defendants who went to trial, the jury did not forfeit the motorcycles. So I'm not sure how that plays into the Court's ruling on this.

THE COURT: It doesn't. I mean, he agreed. He signed a plea agreement and agreed to forfeit it. All right. Well, I guess my thought is, I want to give Mr. Bifield a chance to say anything he wants to say about this Harley Davidson, but my thought is that I need to know whether he opposes forfeiting any interest that he might have in that motorcycle.

MR. BURNSIDE: If I can have just a moment.

12

THE COURT: Do you know the extent of the lien on the motorcycle? Does anyone know how much is owed versus – in other words, how much equity there is versus how much loan there is?

MR. RICHARDSON: The answer is someone knows.

THE COURT: But you don't.

MR. RICHARDSON: I just don't want to say that. Someone does know. I have seen that information, but I can't tell you if it's this motorcycle as compared to the other ten.

THE COURT: Well, if the lienholder has a large lien, often the Government just turns the motorcycle back over to the lienholder. Rather than selling it, they just give it to the lienholder. If it's a low lien and there is a lot of equity in it, then often the Government will auction it and then pay off the lienholder.

MR. BURNSIDE: From what Mr. Bifield tells me, he believes that it was about $5,000 owed on it a year ago or whenever he was arrested. I mean, I assume interest has continued to run on it. It was worth in excess of $20,000 at the time. But he believes that it's been left outside and may have deteriorated. I'm not sure whether the Government agrees with that or not. But he is -- and correct me if I'm wrong -- I think he's willing to not contest the forfeiture of the motorcycle.

THE COURT: All right. Is that correct, Mr. Bifield?

DEFENDANT: Yes, ma'am.

THE COURT: Okay. All right. Then what about the $300,000 judgment?

MR. BURNSIDE: Judge, Mr. Bifield is 61 years old right now. Looking at the time that he's looking at –

THE COURT: Right.

MR. BURNSIDE: -- $300,000, I mean, he just – there's no way that's ever going to be paid.

THE COURT: I agree it's not collectible unless he's got some property hidden somewhere. But I need to know whether he opposes it or not.

MS. EVATT: Your Honor, is it your understanding that that would come out of his inmate wages in the BOP? Or is that something in the future, that if he ever had assets? I would hate for him to pay towards that for –

>THE COURT: I have not seen them execute on judgments that way. They do take that money for restitution and for special assessments, but I have never seen them execute on a judgment, unless somebody, like if he inherited money and he put that into his inmate account, which would not be smart; in any event, if he did that and they found out about it, they might try to levy on it. But I've not seen that happen. I've only seen it with restitution. But I can't say for sure what the BOP would do.
>
>MR. BURNSIDE: Judge, he's not going to oppose the Government's motion.
>
>THE COURT: Is that correct, Mr. Bifield?
>
>DEFENDANT: Yes, ma'am.
>
>THE COURT: Okay. Then I'll enter this judgment and preliminary forfeiture as part of the sentence.

Tr. of Sentencing at 71-80, ECF No. 1391.

The Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, provides representation by counsel shall be provided for any financially eligible person who, *inter alia*, "is charged with a felony . . . ." 18 U.S.C. § 3006A(a)(1)(A). Without question, the crimes with which Defendant was charged and pleaded guilty were felony offenses. Because Defendant was convicted of violating 18 U.S.C. § 1962(d), Title 18 U.S.C. § 1963 provides that "[w]hoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years . . . or both, and shall forfeit to the United States . . . any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . ." 18 U.S.C. § 1963(a)(3).

As is relevant to this case, the forfeiture of criminal proceeds constitutes punishment to which the Excessive Fines Clause of the Eighth Amendment applies. *See Austin v. United States*, 509 U.S. 602, 622 (1993) (forfeiture "constitutes payment to a sovereign as punishment for some offense, and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.") (citation omitted); *Alexander v. United States*, 509 U.S. 544, 558-59 (1993) (the entire

forfeiture, including the forfeiture of proceeds, was "clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine,'" and so subject to analysis under the Excessive Fines Clause.).  See also *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (forfeiture constitutes punishment because it was "imposed at the culmination of a criminal proceeding [,] . . . requires conviction of an underlying felony, and . . . can be imposed . . . only upon a person who has himself been convicted" of the crime.).  It therefore cannot be argued that counsel's responsibilities did not extend to representing Defendant relating to the forfeiture allegations contained in the indictment as representation would necessarily extend to any punishment Defendant received after conviction.

However, even assuming, for purposes of this motion, that counsel was ineffective in stating that he did not represent Defendant on the indictment's forfeiture issues, many courts have concluded that the statutory language of § 2255 indicates that a motion under § 2255 "may not be used for the sole purpose of challenging fines or restitution orders." *United States v. Hudgins*, 201 F. App'x 142, 143 (4th Cir. 2006) (holding that, because a § 2255 motion may not be used for the sole purpose of challenging fines or restitution orders, the district court should have treated movant's claim as a habeas corpus petition under 28 U.S.C. § 2241) (citing *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir.2003)); *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) (a movant cannot utilize § 2255 to challenge a restitution order, even if cognizable claims seeking release from custody are also raised); *United States v. Fabian*, C/A No. CCB–09–2810, Cr. No. CCB–07–0355, 2011 WL 2791085 at *30 (D. Md. July 14, 2011) (collecting cases) (a noncustodial component of a sentence, such as a restitution or forfeiture order, cannot be attacked in a § 2255 petition); *but cf. United States v. Luessenhop*, 143 F. App'x 528, 531 (4th Cir. 2005) (allowing, without discussion

of propriety of proceeding under § 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less).

Defendant asserts that he received ineffective assistance of counsel regarding the forfeiture allegations of the indictment.[3] But the fact that Defendant alleges ineffective assistance with respect to forfeiture does not change the fact that he cannot prevail on his claim as he is still seeking to challenge a noncustodial forfeiture order. *See Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003) ("the language of § 2255 is best read as requiring a challenge to custody. But more fundamentally, we agree with [other circuit courts] also because collateral challenges have historically been permitted through habeas only when an interest as compelling as freedom from custody is at stake."); *id.* at 85 n.1 (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under § 2255). Even if this issue is properly raised in a § 2255 motion, Defendant cannot establish any prejudice resulting from counsel's ineffectiveness. Defendant agreed to forfeiture at sentencing after consulting with counsel. *See* Tr. of Sentencing at 80.

For these reasons, Defendant's claim of ineffective assistance of counsel regarding the forfeiture order fails and the Government is entitled to summary judgment on this claim.

### IV. CONCLUSION

---

[3]Despite counsel's assertion that representation extended only to Defendant's "liberty" interest, counsel consulted with Defendant concerning the forfeiture issue and affirmatively argued on behalf of Defendant regarding provisions of the forfeiture order. *See* Tr. of Sentencing at 79 ("MR. BURNSIDE: Judge, Mr. Bifield is 61 years old right now. Looking at the time that he's looking at – THE COURT: Right. MR. BURNSIDE: -- $300,000, I mean, he just – there's no way that's ever going to be paid.").

For the reasons discussed above, Defendant's motion for summary judgment (ECF No. 1791) is **denied**, the Government's motion for summary judgment (ECF No. 1774) is **granted** in its entirety and Defendant's motion for relief is dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 2, 2015