IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | Cr. No. 3:12-430-CMC |
| v. | |
| Daniel Bifield, | Order |
| Defendant. | |

This matter is before the court on Defendant's letter following the denial of his motion for compassionate release, which the court construed as a motion for reconsideration. ECF No. 1932. The court set a videoconference hearing for November 3, 2021 and ordered the Government to provide updated medical records. The Government filed such records (ECF No. 1939), and this order follows the hearing.

a. Background

Defendant filed a previous motion for compassionate release based on his medical conditions and COVID-19. ECF No. 1915.[1] That motion was denied by this court after evaluating Defendant's arguments and the 18 U.S.C. § 3553(a) factors. ECF No. 1929. However, after that denial, the court received a letter from Defendant noting the court was not correctly informed about his medical conditions. ECF No. 1932. He stated his foot was not "healing nicely," as the Government argued. Rather, his big toe had "busted open and started bleeding again," and he had staph infections in two of his fingers and an infection on his lower back. He was on two types of

---

[1] Defendant is a 70-year-old inmate with a projected release date of May 7, 2027.

antibiotic and reported feeling "poorly and tired" because of the infections, staph and MRSA[2], from which he was suffering. *Id.* Defendant noted his Unit Manager came to his cell to check on him and called medical to assist and take him to the hospital. *Id.* at 2. He also noted that although the court's order said there were no new cases of COVID-19 at his institution, he was aware of at least seven prisoners who had to be quarantined and two staff members sent home because of the virus. *Id.*

Based on this letter, the court entered a Docket Text Order construing it as a motion for reconsideration of the denial of his compassionate release motion, set a hearing for November 3, 2021, and ordered the Government to provide updated medical records. ECF No. 1934. Additional medical records were filed by the Government on October 7, 2021. ECF No. 1939.

    b.  <u>Section 3582(c)(1)(A) motions brought by Defendants</u>

The court, on motion of a defendant after 1) fully exhausting administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on his behalf, or 2) the lapse of 30 days from the receipt of such a request by the warden of the facility, whichever is earlier, may reduce the term of imprisonment. 18 U.S.C. § 3582(c)(1)(A) (as amended by First Step Act). As noted in the original order (ECF No. 1929), the court acknowledged Defendant has exhausted administrative remedies.

---

[2] MRSA, or Methicillin-Resistant Staphylococcus Aureus, is a type of staph infection that is resistant to common antibiotics. MRSA infections are more common in certain groups, such as prison inmates. MRSA is highly contagious and spread by touching or sharing contaminated items, such as clothes, bedsheets, medical equipment, towels, and utensils. MRSA infections may be serious, even life-threatening. Important MRSA infections include bone infection (osteomyelitis), which resulted in amputation of Defendant's big toe. Methicillin-Resistant Staphylococcus Aureus (MRSA), Cleveland Clinic (last accessed Nov. 8, 2021), available at MRSA (Staph Infection: What It Is, Symptoms & Treatment (clevelandclinic.org).

Section 3582(c)(1)(A)(i) allows a court to modify a term of imprisonment once it has been imposed for extraordinary and compelling reasons if such a reduction is consistent with the applicable policy statement issued by the Sentencing Commission. While a Sentencing Commission Policy Statement at § 1B1.13 described categories of reasons that qualify as "extraordinary and compelling," that Policy Statement was published prior to the First Step Act's amendment of § 3582(c)(1)(A)(i), and a new Policy Statement has not been issued since that amendment.[3] Therefore, the Fourth Circuit recently held, there is no "applicable" policy statement governing motions such as the one Defendant has now filed. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020).

"By its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at 282; *see also United States v. Zullo,* 976 F.3d 228, 230 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 2020 WL 6817488, at 1101–02 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [ ] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283. Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *Zullo*, 976 F.3d at 230). However, the appellate court noted the

---

[3] The First Step Act's amendment of this section allows a defendant to move for compassionate release, as opposed to the previous scheme where only the BOP could move for such a reduction.

policy statement remains "helpful guidance" for compassionate release motions filed by defendants. *Id.* at 282.

    c.  <u>Extraordinary and Compelling Reasons</u>

As noted above, although § 1B1.13 is not binding on the court for this Defendant-brought motion, it remains "helpful guidance." *McCoy*, 981 F.3d at 282; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). A court may, therefore, find a reduction in sentence is warranted by extraordinary and compelling reasons, "which are not statutorily defined." *High*, 997 F.3d at 186. In *High*, the Fourth Circuit reasoned

> [b]oth before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same — that a court may reduce a sentence "if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). And U.S.S.G. § 1B1.13 describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (emphasis added) (internal quotation marks omitted). With respect to medical conditions, such reasons include that "[t]he defendant is suffering from a terminal illness" or "[t]he defendant is ... suffering from a serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii). So while U.S.S.G. § 1B1.13 is not applicable to defendant-filed motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to BOP-filed motions. One might reasonably believe therefore that the term "extraordinary and compelling reasons" will be defined the same for defendant-filed motions.

*Id.* Comment 1 to § 1B1.13 states extraordinary and compelling reasons may exist based on medical conditions of the Defendant if he is suffering from a terminal illness or is suffering from a "serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." While it is not binding

on this court, it appears to the court the criteria in § 1B1.13 Cmt. 1 (A)-(C) are relevant and helpful in considering motions based on medical conditions, such as the instant motion.

The Fourth Circuit has noted that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *High*, 997 F.3d at 185. Thus, a petitioner can present an extraordinary and compelling reason related to COVID-19, and district courts have discretion to determine how to resolve such motions. *Id.* Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where defendants have serious medical problems that placed them at high risk for complications if they contracted COVID-19.

Defendant cites the coronavirus pandemic, as well as his preexisting medical conditions of COPD, high blood pressure, high cholesterol, Barrett's disease, and an amputated toe and multiple staph and MRSA infections as extraordinary and compelling reasons justifying a reduction in sentence. At the hearing, he testified he has had 26 staph and MRSA infections, with open wounds, and has frequently been on antibiotics for these infections. This makes him feel sick, weak, and tired. He is able to get up and walk to the cafeteria on most occasions, but other inmates often assist him and will get his tray and bring it back to his cell when allowed. These inmates, including his cellmate, also go to the commissary for him and alert the Unit Manager if Defendant is unwell or unable to get out of bed. Unit Manager Gilman has called medical on several occasions to insist Defendant be seen for his infections. Defendant additionally notes there is a new wave of COVID-19 infections at his facility.

Records show Defendant was seen by medical on August 20, 2021, for multiple issues – his toe was draining, and he had an infection in his finger and a rash on his upper buttocks with

oozing blisters. ECF No. 1939 at 23. The provider noted Defendant needed to return to the podiatrist soon. Defendant was seen by podiatry on September 16 and reported his toe was scraped, cleaned, and redressed, *id.* at 7, but that note is not included in the medical records. On September 22, Defendant was seen for a nasal skin infection and given antibiotics. He returned on October 6 and his nose looked better, but the pathology had returned, and the infection was MRSA. *Id.* at 1.

At the hearing, Defendant testified the doctor told him staph "is running wild in his body," causing an infection every time he gets a cut or scrape because his body just can't fight it off. He feels week, sick, and tired and sleeps a lot. Records indicate his toe was amputated due to osteomyelitis, a serious MRSA infection of the bone. ECF No. 1926-1 at 67. He has not, however, been told he has a blood stream infection. He noted Nurse Fuller requested a special medication for the infections eight or nine months ago (he did not recall its name) but the request was denied at the regional level. He is not currently taking any antibiotics, but was very sick in October with MRSA.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. The CDC includes COPD and high blood pressure as underlying conditions that can subject one to increased risk for severe illness if he were to contract COVID-19. *See* Medical Conditions (last accessed Nov. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. The Government acknowledges it previously agreed unvaccinated inmates with certain medical conditions that increased risk of severe illness from COVID-19 could establish

extraordinary and compelling reasons for compassionate release. However, as Defendant has already had COVID and has been vaccinated, the Government contends he is able to protect himself against COVID-19, even with his preexisting conditions and in a prison setting.[4]

Defendant's medical conditions are serious and inconvenient in a prison setting. It does appear from the medical records Defendant has significant staph and MRSA infections on a frequent basis. MRSA is a highly contagious condition that is difficult to treat, and the risk of antibiotic resistance is high. However, Defendant is able to walk and care for himself most days, although he does have other inmates who assist him with getting his meals or seeking medical assistance through the Unit Manager at times.

Based on the above, the court will assume extraordinary and compelling reasons exist based on Defendant's frequent staph and MRSA infections. In addition, Defendant has at least two underlying medical conditions, COPD and high blood pressure, that could subject him to increased risk of severe illness from COVID-19, though it appears he may have escaped serious illness as he has already contracted the virus and has now been vaccinated.

However, the court declines to grant this motion for reconsideration and reduce Defendant's sentence at this time based on its assessment of the § 3553(a) factors described in its previous order at ECF No. 1929. The court does not have jurisdiction to consider whether Defendant should be placed on home confinement, and will leave to the BOP whether he is an

---

[4] Defendant is housed at Talladega FCI, where the BOP reports there are no positive tests in staff or inmates for COVID-19. 259 inmates and 71 staff are listed as recovered from the coronavirus. 145 staff members and 373 inmates, including Defendant, have been fully vaccinated against COVID-19. COVID-19 Cases (last accessed Nov. 4, 2021), https://www.bop.gov/coronavirus/. As set forth above, Defendant disputes this and states there has been a resurgence of the virus at Talladega.

appropriate candidate given his age and the difficulty managing his medical conditions in the prison setting. The court does note there is some question as to whether Defendant can adequately care for himself, as he requires assistance from other inmates at times to get his food, laundry, and other assistance from the Unit Manager receiving medical attention for his infections, many of which are highly contagious.

The United States Probation Office in South Carolina has determined Defendant's release plan, to live with a retired nurse in the Eastern District of North Carolina, is appropriate, and that District's Probation Office has viewed the home and found it acceptable. It appears this plan would be approved, and courtesy supervision accepted by the Probation Office in the Eastern District of North Carolina, if the BOP determines home confinement appropriate.

d. Conclusion

For the reasons above and in the court's prior order, the court declines to order reduction of Defendant's sentence at this time. Accordingly, Defendant's letter, construed by this court as a motion to reconsider, (ECF No. 1932) is denied without prejudice. As noted above, the court leaves determination of home confinement to the BOP.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
November 8, 2021